## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **TERRI PEPPER, ANN BENITEZ, DENISE ARNOLD, and SAMUEL ROGERS, individually and on behalf of all others similarly situated,** | ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 4:20-cv-2964** |
| **LIBERTY POWER CORP., LLC** | ) ) | |
| **Defendant.** | ) ) ) ) ) ) | |

## CLASS ACTION COMPLAINT

Plaintiffs, Terri Pepper, Ann Benitez, Denise Arnold, and Samuel Rogers (collectively "Plaintiffs), on behalf of themselves and all other similarly situated parties, by and through their undersigned counsel, and pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and Fed. R. Civ. P. 23, files this Class Action against Defendant, Liberty Power Corp., LLC. ("Defendant" or "Liberty Power").

### I.       PARTIES

1.       Plaintiff, Terri Pepper, is an individual and a citizen of Texas residing in Woodland, Texas.  At all relevant times Plaintiff Pepper was the user, subscriber, owner and possessor of the residential telephone number ending in number -0401.

2.       Plaintiff Ann Benitez is an individual and a citizen of Texas residing in Houston, Texas. At all relevant times Plaintiff Benitez was the user, subscriber, owner and possessor of the

residential telephone number ending in number -9784.

3.       Plaintiff Denise Arnold is an individual and a citizen of Texas residing in Spring, Texas. At all relevant times Plaintiff Arnold was the user, subscriber, owner and possessor of the residential telephone number ending in number -6613.

4.       Plaintiff Samuel Rogers is an individual and a citizen of Texas residing in Katy, Texas. At all relevant times Plaintiff Rogers was the user, subscriber, owner and possessor of the residential telephone number ending -5430.

5.       Defendant Liberty Power is a corporation organized and existing under the laws of the State of Delaware.

## II.       JURISDICTION AND VENUE

6.       Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the TCPA, a federal statute.

7.       The Court has personal jurisdiction over Defendant because Defendant operates within this state and the challenged marketing calls at issue in this case were directed by Defendant to residents within this state.

8.       Venue is proper in the this district pursuant to 28 U.S.C. § 1391 (b)(2)-(3) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District and Defendant is subject to the Court's jurisdiction in this district.

## III.       INTRODUCTION

9.       Plaintiffs brings this action under the TCPA.

10.       The TCPA was enacted in response to widespread public outrage concerning the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

11.     The TCPA is designed to protect consumer privacy by prohibiting, among other things, autodialed or pre-recorded telemarketing calls to cellular telephones without the "prior express written consent" of the called party.  47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

12.     Liberty Power automated telemarketing calls to Plaintiffs using equipment prohibited by the TCPA, even though it did not have their prior express written consent to do so.

13.     Plaintiffs did not give prior express written consent to receive autodialed phone call on their cellular phone from Liberty Power.

14.     This case challenges Liberty Power's practice of initiating autodialed and pre-recorded telemarketing calls to cellular telephones without the prior express written consent of the called party as required by the TCPA.  47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

15.     Plaintiffs seek class-wide relief against Liberty Power for violating the Telephone Consumer Protection Act, 47 U.S.C. § 227.  A class action is the best means of obtaining redress for Liberty Power's illegal marketing calls and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

16.     Liberty Power's practice caused actual harm to Plaintiffs and the other members of the Class in several ways, including temporarily using their cellular phones and tying up their phone lines, invading their privacy, causing wear and tear on their cellular phones, consuming battery life, and causing some of them to be charged for calls they did not want to receive. Moreover, these calls injured Plaintiffs and the Class because they were frustrating, obnoxious, annoying, and a nuisance, and disturbed their solitude.

### IV.     THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

### A.     *THE HISTORY OF THE TCPA.*

17.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

18.     When Congress enacted the TCPA in 1991, it found that telemarketers were calling 18 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991,* 18 FCC Rcd. 14014, 14021 ¶ 8 (2003) ("2003 Order"). By 2003, telemarketers were calling 104 million Americans every day, assisted by the proliferation of new and more powerful autodialing technology. *Id.* at ¶¶ 2, 8.

19.     The problems Congress identified when it enacted the TCPA have only grown worse in recent years. The FCC has emphasized that action must be taken to "stop the scourge of illegal robocalls" because "U.S. consumers received approximately 2.4 billion robocalls per month in 2016." Federal Communications Commission, *The FCC's Push to Combat Robocalls & Spoofing,* https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing (last visited Jan. 31, 2020).

**B.     *THE TCPA PROHIBITS AUTOMATED TELEMARKETING CALLS.***

20.     The TCPA requires prior express written consent for all autodialed or pre-recorded telemarketing calls to cellular telephone numbers.  *In re Rules and Regulations Implementing the TCPA of 1991,* 27 FCC Rcd. 1830, 1844 (2012); 47 C.F.R. § 64.1200(f)(1), (12).

21.     "The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic

telephone dialing system or an artificial or pre-recorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

22.     "The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services."  47 C.F.R. 64.1200(f)(8)(i)(A).

## V.     Individual Allegations

23.     On information and belief, Defendant, surreptitiously obtained the cellular telephone number of Plaintiff Pepper and others, then proceeded to send or cause others to send unsolicited telemarketing marketing calls to those individuals, using automatic telephone dialing equipment and pre-recorded messages.  Liberty Power used an ATDS to send Plaintiffs and other Class members unsolicited telephone solicitations using an ATDS and pre-recorded messages without the Plaintiffs' prior express written consent.

### A.     *Plaintiff Pepper*

24.     Plaintiff Pepper's telephone number, ending in the number -0401, is registered to a cellular telephone service.  All calls to Plaintiff Pepper described herein were to that cellular telephone number.

25.     Plaintiff Pepper's telephone number has been on the National Do Not Call Registry since December 15, 2004.

26.     Plaintiff Pepper has never been a customer of Liberty Power and has not provided

Liberty Power with prior express written consent to contact her.

27.     On November 13, 2019, at around 4:22 p.m. (CST), Plaintiff Pepper received an unsolicited call on her cellular phone.

28.     The caller ID showed the phone call was from (806) 281-2059, which she subsequently learned was from Liberty Power.

29.     Plaintiff Pepper answered.

30.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please pAress 1 on your phone now to speak to your account representative."

31.     Plaintiff Pepper hung up.

32.     On December 4, 2019, at around 4:28 p.m.  (CST), Plaintiff Pepper received an unsolicited call on her cellular phone.

33.     The caller ID showed the phone call was from (806) 683-9583, which she subsequently learned was from Liberty Power.

34.     Plaintiff Pepper answered.

35.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

36.     Plaintiff Pepper hung up.

37.     On December 13, 2019 at around 1:08 p.m.  (CST), Plaintiff Pepper received an unsolicited call on her cellular phone, which she subsequently learned was from Liberty Power.

38.     The caller ID showed the phone call was from (806) 620-2704, which she subsequently learned was from Liberty Power.

39.     Plaintiff Pepper answered.

40.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

41.     Plaintiff Pepper hung up.

42.     On December 17, 2019 at around 1:26 p.m.  (CST), Plaintiff Pepper received an unsolicited call on her cellular phone.

43.     The caller ID showed the phone call was from (806) 631-1171, which she subsequently learned was from Liberty Power.

44.     Plaintiff Pepper answered.

45.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

46.     Plaintiff Pepper hung up.

47.     On December 26, 2019 at around 6:05 p.m.  (CST), Plaintiff Pepper received an unsolicited call on her cellular phone.

48.     The caller ID showed the phone call was from (817) 316-6151, which she subsequently learned was from Liberty Power.

7

49.     Plaintiff Pepper answered.

50.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment . . . ."

51.     Plaintiff Pepper hung up.

52.     On December 30, 2019 at around 5:49 p.m.  (CST), Plaintiff Pepper received an unsolicited call on her cellular phone.

53.     The caller ID showed the phone call was from (940) 479-4100, which she subsequently learned was from Liberty Power.

54.     Plaintiff Pepper answered.

55.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

56.     Plaintiff Pepper hung up.

57.     On January 14, 2020 at around 12:34 p.m. (CST), Plaintiff Pepper received an unsolicited call on her cellular phone.

58.     The caller ID showed the phone call was from (325) 906-7932, which she subsequently learned was from Liberty Power.

59.     Plaintiff Pepper answered.

60.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

61.     Plaintiff Pepper hung up.

62.     On January 15, 2020 at around 6:44 p.m.  (CST), Plaintiff Pepper received an unsolicited call on her cellular phone.

63.     The caller ID showed the phone call was from (432) 274-1056, which she subsequently learned was from Liberty Power.

64.     Plaintiff Pepper answered.

65.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

66.     Plaintiff Pepper hung up.

67.     On January 16, 2020 at around 3:57 p.m. (CST), Plaintiff Pepper received an unsolicited call on her cellular phone.

68.     The caller ID showed the phone call was from (832) 368-5399, which she subsequently learned was from Liberty Power.

69.     Plaintiff Pepper answered.

70.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

71.     Plaintiff Pepper hung up.

72.     On January 23, 2020 at around 10:32 a.m.  (CST), Plaintiff Pepper received an unsolicited call on her cellular phone.

73.     The caller ID showed the phone call was from (281) 967-4613, which she subsequently learned was from Liberty Power.

74.     Plaintiff Pepper answered.

75.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

76.     Plaintiff Pepper pressed 1 to learn who was calling her, and a salesperson named Jake came on the line.  Plaintiff Pepper hung up and did not provide prior express consent to receive more telemarketing calls.

77.     On January 31, 2020 at around 12:28 p.m.  (CST), Plaintiff Pepper received an unsolicited call on her cellular phone.

78.     The caller ID showed the phone call was from (972) 367-6751, which she subsequently learned was from Liberty Power.

79.     Plaintiff Pepper answered.

80.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

81.     Plaintiff Pepper pressed 1 to learn who was calling her, and a salesperson named Jake came on the line.  Plaintiff Pepper hung up and did not provide prior express consent to receive more telemarketing calls.

82.     On February 17, 2020 at around 3:33 p.m.  (CST), Plaintiff Pepper received an

unsolicited call on her cellular phone.

83.     The caller ID showed the phone call was from (512) 749-6903, which she subsequently learned was from Liberty Power.

84.     Plaintiff Pepper answered.

85.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

86.     Plaintiff Pepper pressed 1 to learn who was calling her, and a salesperson named Shawn came on the line.  Plaintiff Pepper learned from Shawn that the company calling her was Liberty Power, and she hung up without providing prior express consent to receive further telemarketing calls.

87.     On February 25, 2020 at around 10:22 a.m.  (CST), Plaintiff Pepper received an unsolicited call on her cellular phone.

88.     The caller ID showed the phone call was from (512) 485-4222, which she subsequently learned was from Liberty Power.

89.     Plaintiff Pepper answered.

90.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

91.     Plaintiff Pepper pressed 1 to learn who was calling her, and a salesperson named Shawn came on the line.  Plaintiff Pepper learned from Shawn that the company calling her was

Liberty Power, and she hung up without providing prior express consent to receive further telemarketing calls.

B.    ***Plaintiff Benitez.***

1.      Plaintiff Benitez's telephone number ending in -9784 is registered to a cellular telephone service.  All calls to Plaintiff Benitez described herein were to that cellular telephone number.

92.    Plaintiff Benitez's telephone number has been on the National Do Not Call Registry since March 11, 2008.

93.    Plaintiff Benitez has never been a customer of Liberty Power and has not provided Liberty Power with prior express written consent to contact her.

94.    On December 6, 2019, at around 12:34 p.m. (CST), Plaintiff Benitez received an unsolicited call on her cellular phone

95.    The caller ID showed the phone call was from (432) 204-6019, which she subsequently learned was from Liberty Power.

96.    Plaintiff Benitez answered.

97.    The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

98.    Plaintiff Benitez hung up.

99.    On December 23, 2019, at around 6:17 p.m. (CST), Plaintiff Benitez received an unsolicited call on her cellular phone

100.    The caller ID showed the phone call was from (432) 876-2686, which she

subsequently learned was from Liberty Power.

101.    Plaintiff Benitez answered.

102.    The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

103.    Plaintiff Benitez pressed 1 to learn who was calling her, and a salesperson named Mark came on the line.  Plaintiff Benitez asked for the name of the company that was calling, and the salesperson became nonresponsive.  Plaintiff Benitez hung up without providing prior express consent to receive further telemarketing calls.

104.    On December 27, 2019, at around 1:40 p.m. (CST), Plaintiff Benitez received an unsolicited call on her cellular phone.

105.    The caller ID showed the phone call was from (940) 474-3502, which she subsequently learned was from Liberty Power.

106.    Plaintiff Benitez answered.

107.    The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

108.    Plaintiff Benitez pressed 1 to learn who was calling her, and a salesperson named Shawn came on the line.  Plaintiff Benitez asked for the name of the company that was calling, and the salesperson refused to answer her question.  Plaintiff Benitez hung up without providing prior express consent to receive further telemarketing calls.

109.     On January 3, 2020, at around 5:33 p.m. (CST), Plaintiff Benitez received an unsolicited call on her cellular phone

110.     The caller ID showed the phone call was from (817) 818-6488, which she subsequently learned was from Liberty Power.

111.     Plaintiff Benitez answered.

112.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

113.     Plaintiff Benitez hung up.

114.     On January 17, 2020, at around 10:27 a.m. (CST), Plaintiff Benitez received an unsolicited call on her cellular phone

115.     The caller ID showed the phone call was from (682) 538-4048, which she subsequently learned was from Liberty Power.

116.     Plaintiff Benitez answered.

117.     The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

118.     Plaintiff Benitez pressed 1 to learn who was calling her, and a salesperson named Justin came on the line.  Plaintiff Benitez asked for the name of the company that was calling, and the salesperson refused to answer her question.  Plaintiff Benitez hung up without providing prior express consent to receive further telemarketing calls.

119.    On February 21, 2020, at around 3:04 p.m. (CST), Plaintiff Benitez received an unsolicited call on her cellular phone

120.    The caller ID showed the phone call was from (832) 910-1095, which she subsequently learned was from Liberty Power.

121.    Plaintiff Benitez answered.

122.    The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

123.    Plaintiff Benitez pressed 1 to learn who was calling her, and a salesperson named Adam came on the line.  Plaintiff Benitez asked for the name of the company that was calling, and the salesperson stated that the company was called "Wind Power Energy."  When Plaintiff Benitez asked for more information about Wind Power Energy, the salesperson became nonresponsive, and Plaintiff Benitez hung up without providing prior express consent to receive further telemarketing calls.

124.    On January 24, 2020, at around 5:47 p.m. (CST), Plaintiff Benitez received an unsolicited call on her cellular phone

125.    The caller ID showed the phone call was from (932) 444-2982, which she subsequently learned was from Liberty Power.

126.    Plaintiff Benitez answered.

127.    The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now

to speak to your account representative."

128.    Plaintiff Benitez pressed 1 to learn who was calling her, and a salesperson came on the line.  Plaintiff Benitez asked for the name of the company that was calling, and the salesperson stated that the company was Liberty Power.  Plaintiff Benitez hung up without providing prior express consent to receive further telemarketing calls.

## C.    *Plaintiff Arnold.*

129.    Plaintiff Arnold's telephone number, ending in the number -6613, is registered to a cellular telephone service.  All calls to Plaintiff Arnold described herein were to that cellular telephone number.

130.    Plaintiff Arnold's telephone number has been on the National Do Not Call Registry since May 4, 2008.

131.    Plaintiff Arnold has never been a customer of Liberty Power and has not provided Liberty Power with prior express written consent to contact her.

132.    On December 19, 2019 at around 10:08 a.m. (CST), Plaintiff received an unsolicited call on her cellular phone.

133.    The caller ID showed the phone call was from (432) 223-2816, which she subsequently learned was from Liberty Power.

134.    Plaintiff Arnold answered.

135.    The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

136.    Plaintiff Arnold pressed 1 to learn who was calling her, and a salesperson came

on the line.  Plaintiff Benitez asked for the name of the company that was calling, and the salesperson stated that the company was LP Power.  Plaintiff Arnold hung up without providing prior express consent to receive further telemarketing calls.

137.    On December 30, 2019 at around 9:48 a.m. (CST), Plaintiff received an unsolicited call on her cellular phone.

138.    The caller ID showed the phone call was from (940) 721-8405, which she subsequently learned was from Liberty Power.

139.    The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

140.    Plaintiff Arnold pressed 1 to learn who was calling her, and a salesperson came on the line.  Plaintiff Benitez asked for the name of the company that was calling, and the salesperson stated that the company was Liberty Power.  Plaintiff Arnold hung up without providing prior express consent to receive further telemarketing calls.

141.    On January 23, 2020, 2019 at around 9:20 a.m. (CST), Plaintiff received an unsolicited call on her cellular phone.

142.    The caller ID showed the phone call was from (281) 262-2046, which she subsequently learned was from Liberty Power.

143.    The Plaintiff answered that call.

144.    The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now

to speak to your account representative."

145.    Plaintiff Arnold pressed 1 to learn who was calling her, and a salesperson came on the line.  Plaintiff Benitez asked for the name of the company that was calling, and the salesperson stated that the company was LP Power.  Plaintiff Arnold hung up without providing prior express consent to receive further telemarketing calls.

146.    On January 22, 2020, at around 9:41 a.m. (CST), Plaintiff received an unsolicited call on her cellular phone

147.    The caller ID showed the phone call was from (281) 353-4045, which she subsequently learned was from Liberty Power.

148.    The Plaintiff answered that call.

149.    The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

150.    Plaintiff Arnold pressed 1 to learn who was calling her, and a salesperson came on the line.  Plaintiff Arnold hung up after informing the salesperson that she was not interested in switching energy providers, and she did not provide express consent to receive further telemarketing calls.

D.    ***Plaintiff Rogers.***

151.    Plaintiff Rogers' telephone number, ending in number -5208 is registered to a cellular telephone service.  All marketing calls to Plaintiff Rogers described herein were to that cellular telephone number.

152.    Plaintiff Rogers' telephone number has been on the National Do Not Call

Registry since August 1, 2019.

153.    Plaintiff Rogers has never been a customer of Liberty Power and has not provided Liberty Power with prior express written consent to contact him.

154.    On January 21, 2020 at around 3:25 p.m. (CST), Plaintiff Rogers received an unsolicited call on his cellular phone.

155.    The caller ID showed the phone call was from (409) 881-6881, which he subsequently learned was from Liberty Power.

156.    Plaintiff answered.

157.    The call was a pre-recorded message stating: "Hello, this is a public message for all CenterPoint customers. If you haven't missed a payment in the last 6 months, you may qualify to receive up to a 15% reduction on your electric bills. Please press 1 on your phone now to speak to your account representative."

158.    Plaintiff Rogers pressed 1 to learn who was calling him, and a salesperson came on the line.  The salesperson identified the company as Liberty Power and asked if he was interested in paying lower electric bills .  Plaintiff Rogers declined the offer and hung up without providing express consent to receive further telemarketing calls.

159.    None of the Plaintiffs have any affiliation with Liberty Power.

160.    None of the pre-recorded messages offered Plaintiffs the opportunity to opt out of receiving future messages; the only advertised choise was to press 1 to speak with a representative.

161.    These unsolicited calls placed to Plaintiffs' cellular telephones were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) and by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A),

which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place marketing calls to Plaintiffs' cellular telephones.

162.    The existence of an ATDS is evidenced by the fact that these marketing calls contained identical introductory and prerecorded messages advertising the same services.  Such generic and impersonal messages indicate that these marketing calls were sent to numerous cellular telephones in a bulk, automated fashion.

163.    Specifically, upon information and belief, Defendant utilizes a combination of hardware and software systems to send the marketing calls at issue in this case.  The systems utilized by Defendant have the capacity to capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, en masse, in an automated fashion without human intervention.

164.    The telephone numbers that Liberty Power or its agents, called were assigned to cellular telephone services for which Plaintiffs incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

165.    These telephone calls constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

166.    Thus, these calls by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

## V.    CLASS ALLEGATIONS

167.    Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiffs bring this action against Liberty Power on behalf of themselves and all other persons similarly situated, as members of the following proposed classes (hereafter, the "Class"):

> All persons in the United States (1) who received one or more calls messages from Liberty Power or its agents, (2) to their

mobile or cellular telephone number, (3) through the use of any automatic telephone dialing system or artificial or pre-recorded voice system as set forth in 47 U.S.C. § 227(b)(1)(A); (4) on or after four years before the filing of the complaint, and (5) without their prior express written consent.

168.     Excluded from the Class are Liberty Power or any entity in which Liberty Power has a controlling interest, each of their respective officers or legal representatives, and any Judge assigned to this action, including his or her immediate family.

169.     The proposed class members are identifiable through phone records, internal call logs, and phone number databases.

170.     Plaintiffs are members of the proposed Class.

171.     The automated technology Liberty Power used to call Plaintiffs' cell phones is capable of contacting thousands of people a day, and so the potential class members number in the hundreds or thousands, at least.  Individual joinder of so many persons is impracticable.

172.     There are questions of law and fact common to Plaintiffs and to the proposed class, including but not limited to the following:

     a.   Whether Liberty Power used an automatic telephone dialing system to call the cellular phones of Plaintiff and others;

     b.   Whether Liberty Power used an artificial or prerecorded voice message to call the cellular phones of Plaintiff and others;

     c.   Whether Liberty Power initiated marketing calls to cellular phones without the prior express written consent of the called parties;

     d.   Whether Liberty Power is liable for violations of the TCPA;

     e.   Whether Plaintiff and the other members of the class are entitled to statutory damages under the TCPA;

     f.   Whether Liberty Power's actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiffs and the other members of the class; and

g.  Whether Plaintiffs and members of the class are entitled to equitable relief, including but not limited to injunctive relief.

173.  Plaintiffs' claims are based on the same facts and legal theories as the claims of all class members and therefore are typical of the claims of class members. Plaintiffs and the other class members all received marketing calls to their cellular telephone lines through the same or similar dialing system.

174.  Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the Class they seek to represent.  Plaintiffs are victim of ATDS and prerecorded voice message marketing calls to their cellular phone without any emergency purpose and without their prior express written consent, and they are committed to the vigorous prosecution of this action.  Plaintiffs have retained counsel competent and experienced in complex TCPA class action litigation.  Plaintiffs will vigorously prosecute this action.  Plaintiffs and their counsel will fairly and adequately protect the interest of members of the class.

175.  Common questions of fact and law predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.  The only individual questions concern identification of class members, which will be ascertainable from records maintained by Liberty Power or their agents.

176.  The likelihood that individual class members will prosecute separate actions is remote because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable given the expense involved and the small recoveries available through individual actions.

## COUNT I
## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
### (47 U.S.C. § 227, *et seq.*)

177.  Plaintiffs incorporate all preceding paragraphs as though fully set forth herein and

brings Count I individually and on behalf of the class.

178.    The foregoing acts and omissions of Liberty Power constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making marketing, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the class using an ATDS and/or artificial or prerecorded voice.

179.    As a result of Liberty Power's violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the class are entitled to an award of $500 in damages for each and every marketing call made to their cellular telephone numbers using an ATDS or artificial or prerecorded voice in violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

180.    Plaintiff and members of the class are also entitled to, and do seek, injunctive relief prohibiting Liberty Power from violating the TCPA, 47 U.S.C. § 227, by making marketing calls, except for emergency purposes, to cellular telephone numbers using an ATDS or artificial or prerecorded voice.

181.    Liberty Power's violations were knowing or willful.

182.    If the Court determines that Liberty Power's actions were knowing or willful, then Plaintiffs request that the Court increase the statutory damages up to three times the amount. *See* 47 U.S.C. § 227(b)(3).

**WHEREFORE**, Plaintiffs, for themselves and all class members, requests the following relief:

A.    Certification of the proposed class;

B.    Appointment of Plaintiffs as representative of the class;

C.    Appointment of Plaintiffs' counsel as counsel for the class;

D.    An order awarding statutory damages of at least $500 per marketing calls at issue pursuant to 47 U.S.C. § 227(b)(3)(B);

E.      An order increasing those statutory damages up to three times ($1,500 per marketing calls at issue) pursuant to 47 U.S.C. § 227(b)(3)(C);

F.      An order enjoining Liberty Power from engaging in the same or similar unlawful practices alleged herein;

G.      An order awarding costs of suit;

H.      Leave to amend this Complaint to conform to the evidence presented at trial; and

I.      Orders granting any other relief this Honorable Court deems equitable, proper, and just.


/s/ Cory S. Fein
CORY S. FEIN (TX Bar No. 06879450)
CORY FEIN LAW FIRM
712 Main Street, Suite 800
Houston, TX 77002
(281) 254-7717
(530) 748 - 0601 (fax)
cory@coryfeinlaw.com


/s/ Sean C. Wagner
Sean C. Wagner (N.C. Bar No. 50233)
Derek M. Bast (N.C. Bar No. 49069)
*Pro Hac Vice Materials Forthcoming*
WAGNER HICKS PLLC
831 E. Morehead Street, Suite 860
Charlotte, North Carolina 28202
Telephone: (704) 705 7358
sean.wagner@wagnerhicks.law
derek.bast@wagnerhicks.law

ATTORNEYS FOR PLAINTIFFS
AND THE PROPOSED CLASS